IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | 10 CR 805 |
| **HELGA WEIS,** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Helga Weis ("Weis") is charged in a three-count indictment with conspiracy to commit robbery and attempting to knowingly commit a robbery, both in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A),(2). Weis filed a notice pursuant to Fed. R. Crim. P. 12.2(b) indicating that she intends to raise the defenses of coercion or involuntariness as a result of constant, severe battering. She submitted two reports to the government from Licensed Clinical Social Worker Phyllis Gould, and has filed a written Offer of Proof as to Gould's testimony. (Dkt. No. 91 ("Offer of Proof").) The government then filed a motion in limine seeking to bar Gould's testimony. For the reasons stated, the motion is granted.

I.

Weis is accused of working with two individuals in March 2010 to plan a robbery of their cocaine supplier and one of their

customers. Weis allegedly met with the drug customer, obtained $1,500 from him, and then met with the supplier in his car to get the drugs from him. During that meeting, she allegedly used her phone to signal to her partners that the robbery could commence. A gunman then approached both Weis and the supplier and threatened them, firing the gun into the car. Weis gave the drug customer's money to the gunman, who then left with the money. One of the individuals involved in the robbery was Weis' then-boyfriend, referred to in the filings as Individual A.

On Feb. 9, 2012, the government filed its first motion in limine to exclude Gould's testimony, or for a *Daubert* hearing to determine its relevance and reliability. After that motion was briefed, I ordered Weis to file a written Offer of Proof regarding Gould's testimony so that I might better evaluate its admissibility.

According to the Offer of Proof, Gould plans to testify that she earned her master's degree from the School of Social Service Administration at the University of Chicago. She has worked as an adjunct professor at St. Augustine College in the social work program. She is currently in full-time private practice, where she provides general counseling services to individuals, couples, and families. She also specializes in immigration removal proceedings involving the Violence Against Women Act, and has been called as an expert witness in removal proceedings before

2

the Immigration Court. She has submitted expert reports in mitigation in two criminal cases in this district.

Gould is expected to testify that Weis was referred to her for assessment because she was depressed and traumatized as a result of the abuse she received at the hands of her former boyfriend. Gould interviewed Weis on five occasions from April 14, 2011, through May 12, 2011, more than a year after the alleged attempted robbery. She also met with Weis' mother and her two young children, for a total of 15 hours in interviews.

Gould also reviewed certain documents, including: (1) color photos taken by the Chicago police in Weis' apartment in May 2008 when they responded to a domestic violence call. The photos show her apartment in disarray and depict Weis with a split and bloodied lip and bruises on various parts of her body; (2) court documents, including the indictment and a pretrial services report; (3) documents from Casa Central, where Weis completed a domestic violence course in 2011; (4) letters from Weis' mother, the father of her children, and a friend; and (5) an order of protection Weis obtained against Individual A. The government notes that Gould did not review certain recordings between Weis and Individual A made around the time of the events in question.

Gould would testify about the process of making a diagnosis, and that it is based on the person's reporting of symptoms and her own observations of the person's behavior. She would also

explain the use of the Diagnostic and Statistical Manual of Mental Disorders (DSM) and explain her findings regarding Weis. Gould would testify that Weis exhibited signs of anxiety, stress, and depression, problems with her memory and concentration, and low self-esteem. Her behavior, according to Gould, is best understood by a diagnosis of Self-Defeating (Masochistic) Personality Disorder.

As explained in her first report[1], Gould relied upon an Internet article in explaining this disorder. (Dkt. No. 70-1, at 3.) The Aug. 26, 2011, article cited by Gould was on the Examiner.com web site, which compiles articles from independent authors on a variety of topics. *See* http://www.examiner.com/About_Examiner.[2] The article relies primarily on other Internet sources and was written by a student, Gregory Pacana.[3] According to the Pacana article, Self-Defeating Personality Disorder was

---

[1] Gould's first report is the one in which she diagnosed Weis with Self-Defeating Personality Disorder, and is the report primarily at issue here. Gould also diagnosed Weis with PTSD in a supplemental report.

[2] The article cited by Gould is no longer available on-line, but Weis submitted a copy of the article with her sur-response.

[3] Information about Pacana's background comes from another Examiner.com article. *See* Gregory Pacana, *When You are Your Own Worst Enemy*, http://www.examiner.com/article/when-you-are-your-own-worst-enemy (a July 10, 2012, article by the same author, describing Pacana as "working on a Master's Degree in Psychology with a focus in psychopathology.") (last visited July 30, 2012).

4

included in a draft of the DSM-III, but not the DSM-IV, although it is "still recognized by some clinicians as a valid personality disorder." The current version of the DSM does not contain a listing for Self-Defeating Personality Disorder. *See* DSM-IV-TR (4th ed. Text Revision 2000). The DSM "provides a standard, comprehensive diagnostic tool for evaluating mental disorders, and reflects a consensus opinion of the medical community at the time of publication." *Dellarcirprete v. Gutierrez*, 479 F. Supp. 2d 600, 606 (N.D. W.Va. 2007)(quoting *United States v. Thomas*, No. CRIM. CCB-03-0150, 2006 WL 140558, at *3 n.6 (D. Md. Jan. 13, 2006)). Weis acknowledges that the DSM is the standard manual used to diagnose mental disorders. Offer of Proof, 4.

In her report, Gould describes the diagnostic criteria for Self-Defeating Personality Disorder as listed in Pacana's article as coming from the DSM-IV-TR. (Dkt. No. 70-1, at 3.) In fact, the article does not attribute the diagnostic criteria to the DSM-IV. The diagnostic criteria listed in the Pacana article and relied upon by Gould are: (1) choosing people and situations that lead to disappointment, failure, or mistreatment, even when better options are available; (2) rejecting or rendering ineffective attempts by other people to help; (3) following positive personal events with depression, guilt, or pain-inducing behavior; (4) inciting anger or rejection from others, and then feeling hurt, defeated, or humiliated; (5) rejecting

5

opportunities for pleasure; (6) failing to accomplish tasks crucial to one's personal objectives despite the ability to do so; (7) rejecting caring partners; and (8) engaging in excessive self-sacrifice.

Weis has most of these symptoms, according to Gould. Gould opined that this disorder interfered with Weis' ability to think logically because she was consumed with a desire to gain Individual A's love and approval. Gould also administered the Beck Depression and Anxiety Inventories, and Weis fell in the range of severe depression and anxiety.

The government seeks to exclude all of Gould's testimony, arguing that the Offer of Proof does not satisfy Fed. R. Evid. 702, as the proposed testimony is neither relevant nor reliable.

II.

Under Rule 702 and *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, I must determine whether Gould is qualified to testify in this case, and whether her proposed testimony is reliable and relevant. *United States v. Lupton*, 620 F.3d 790, 798 (7th Cir. 2010). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

6

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* requires the district court to act as an evidentiary gatekeeper, ensuring that Rule 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *Lupton*, 620 F.3d at 798 (citing *Daubert,* 509 U.S. at 589). The proponent of the expert testimony has the burden of establishing admissibility by a preponderance of the evidence. *Harris v. Clarke*, No. 06-C-230, 2008 WL 4866683, at * 2 (E.D. Wis. Nov. 10, 2008)(citing Fed. R. Evid. 702 advisory committee's note, 2000 Amendments ¶ 1 (interpreting Fed. R. Evid. 104(a)). Even when an expert's testimony is relevant and reliable, Fed. R. Evid. 704(b) excludes psychiatric testimony on whether the defendant had the capacity to form the requisite intent to commit a crime, "while allowing *relevant* expert testimony detailing the defendant's mental health history which might have a tendency to negate the prosecution's proof on the issue of intent." *Haas v. Abrahamson*, 910 F.2d 384, 397 (7th Cir. 1990) (emphasis in original).

### III.

"A party challenging the admissibility of expert testimony can take issue with both the qualifications and the methodology

7

of the proposed expert." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009); *see Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) ("[A] district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.")

Weis has not provided sufficient evidence to show that a diagnosis of Self-Defeating Personality Disorder would be based on sound scientific principles. As noted, Gould's diagnosis of Self-Defeating Personality Disorder is based on an article of uncertain reliability, and while much of Weis' briefing and the Offer of Proof address this condition as though it is listed in the DSM, it in fact is not.[4] The fact that a diagnosis does not appear in the DSM does not in and of itself render Gould's proposed testimony unreliable, if there is support for that diagnosis in the scientific literature. *See McGee v. Bartow*, 593 F.3d 556, 580-81 (7th Cir. 2010). But Weis (and Gould, in her report) present no scientific literature related to this disorder. Also problematic is the fact that Weis, in her briefing, contends that Self-Defeating Personality Disorder is "comparable" to battered woman syndrome, but does not explain how

---

[4] Gould's report and the Offer of proof lists DSM classification 301.90 for Self-Defeating Personality Disorder. In fact, this is the category for "Personality Disorder Not Otherwise Specified." DSM-IV-TR 729. Gould does not explain how Weis falls into this catch-all listing.

8

the two are related.  Nor does her Offer of Proof address this issue.  In *Daubert*, the Supreme Court explained that proposed testimony must be grounded in the methods and procedures of science, and based on more than subjective beliefs or unsupported speculation.  509 U.S. 589-90.  "Proposed testimony must be supported by appropriate validation — *i.e.,* 'good grounds,' based on what is known."  *Id.* at 590.  In sum, I cannot find Gould's opinion reliable because Weis has failed to present evidence to show that Self-Defeating Personality Disorder is recognized in the psychiatric community.

Reliability is but one problem with the admission of Gould's testimony, with relevance presenting another hurdle.  In the Seventh Circuit, the defense of coercion, also called duress, requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) no reasonable opportunity to avoid the threatened harm. *United States v. Toney*, 27 F.3d 1245, 1248 (7th Cir. 1994).

Given this formulation, or one similar to it, federal courts throughout the country have come to varying conclusions about whether evidence of battered woman syndrome is relevant to a defense of duress.  Again, however, Gould's opinion does not address battered woman syndrome, but rather Self-Defeating Personality Disorder.  Weis asserts that they are comparable,

9

and contends in her briefing that Gould will explain the effects of abuse over a long period of time and why battered women cannot simply leave their abusers, despite their fear of repeated violence.[5]  But this argument is disconnected from both Gould's report and the Offer of Proof, which contains no information about how battered women in general react to abuse. Nor is it clear that Gould believes Weis to be suffering from battered woman syndrome, as her reports do not address this issue.

Battered woman syndrome "generally refers to common characteristics appearing in women who are physically and psychologically abused by their mates." *Fennell v. Goolsby*, 630 F. Supp. 451, 456 (E.D. Pa. 1985).  One expert in a Ninth Circuit case testified that repeated beatings can result in a "learned helplessness" that instills in the victim a negative belief about the effectiveness of her actions and keeps her from leaving the batterer.  *United States v. Johnson*, 956 F.2d 894, 899 (9th Cir. 1992).  Believing themselves to be essentially captive to their abuser, battered women may link themselves to their captors fearing that is the only way to survive.  *Id.* Battered woman syndrome has been commonly used in self-defense

---

[5] For example, Weis contends in a sur-response that "Ms. Gould will help explain in clinical terms why some women do not have the capacity or force of will to simply leave their abusers."  Def.'s Sur-Resp., 3.

cases to explain the behavior of women who injure or kill their batterers. *See id.* at 900. Its application in cases of duress is more problematic, however, given that evidence of battered woman syndrome may be viewed as going toward the subjective vulnerability of the accused, while the defense of duress is based on an objective test of how a reasonable person would respond under the circumstances. *Id.* at 902. Battered women also may have trouble establishing a lack of opportunity to escape, as the duress defense requires. *Id.*

The Seventh Circuit, in *United States v. Madoch*, 149 F.3d 596, 599-600 (7th Cir. 1998), did not "exclude as a matter of law the possibility that some battered women may be able to prove either coercion, duress, or inability to form a specific intent." But it noted that other circuits had rejected the application of battered woman syndrome in the context of duress. *Id.; see United States v. Willis*, 38 F.3d 170, 175-77 (5th Cir. 1994)(barring evidence of battered woman syndrome because it went not to the issue of whether a person of reasonable firmness would have succumbed to coercion, but rather whether the defendant was uniquely vulnerable to coercion); *United States v. Sixty Acres in Etowah Cty.*, 930 F.2d 857, 860-61 (noting that element of immediacy, essential to a duress defense, was not present in a case of generalized fear due to repeated spousal battery).

Other courts have allowed evidence about battered woman syndrome in the context of a duress defense. For example, in *United States v. Marenghi*, 893 F. Supp. 85, 94-95 (D. Me. 1995), the court noted that expert testimony about battered woman syndrome could explain to the jury "the broader picture . . . of a pattern of violence, control, and coercion leading up to the criminal act. Expert testimony could be helpful to explain to the jury how a reasonable person reacts to repeated beatings and emotional abuse." In *Marenghi*, the defense said that it would provide "psychological information, scientific evidence, and psychological data to show how reasonable persons react in similar situations." *Id.* at 97. Similarly, in *United States v. Ramirez*, Crim. No. 10-344(PG), 2012 WL 733973, at *3 (D.P.R. March 6, 2012), the court noted that expert testimony could be valuable to explain "a dynamic where the threat of abuse hovers over every interaction between the individuals."

I need not decide whether this type of evidence should be admissible to establish a coercion defense, because, despite Weis' argument to the contrary, this is not the type of evidence that Gould purports to offer. The Offer of Proof recounts numerous acts of violence by Individual A toward Weis, which, if presented to a jury, might show that Weis had good reason to be afraid of him, and thus be relevant to a duress defense. But in order to be helpful to the jury, "the opinion must be an *expert*

opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723-24 (7th Cir. 1999) (internal quotation omitted).  The Offer of Proof adds nothing in the way of expert opinion about the dynamic of abuse, or how an abused woman might come to feel coerced by her abuser based on repeated acts of violence, even if no immediate threat is made.

Simply put, Gould's reports are not relevant to a duress defense because they do not provide any specialized knowledge that would be relevant to determining the applicability of that defense. I note that in her response to the government's motion, Weis asks not only that I deny the motion in limine, but that I allow her to present the affirmative defense of coercion at trial.  Any decision on this issue is premature.  If, at trial, Weis can produce "sufficient evidence such that a rational jury could infer that [s]he was coerced into committing the crime charged," *see Toney*, 27 F.3d at 1248, then she is entitled to instruction on the defense.  My finding in regard to the motion in limine is solely that Gould's testimony, as outlined in the Offer of Proof, is not relevant to a defense of coercion.

In fact, Gould's report seems to be aimed not at a duress defense, but the other defense listed in her 12.2(b) notice, that of involuntariness, given that she opines that Weis was so consumed with a desire to please Individual A that she was unable

to think logically. The Seventh Circuit has held that a defense based on an inability to form the requisite intent to commit a crime is an "extremely limited defense" because of its potential to confuse the jury. *United States v. Ricketts*, 146 F.3d 492, 498 (7th Cir. 1998). It applies only to specific intent crimes, and expert testimony on this issue is allowed only when it can make a "meaningful contribution" in guiding jurors in determining whether intent to commit a crime existed. *Id.* at 497–98.

The Seventh Circuit has held that attempted robbery under the Hobbs Act is a specific intent crime, and the government must show that the defendant acted with the specific intent to commit robbery, and took a substantial step toward its completion. *United States v. Villegas*, 655 F.3d 662, 668-69 (7th Cir. 2011). Evidence offered as psychiatric evidence to negate specific intent is admissible when it focuses on the defendant's state of mind at the time of the charged offense. *United States v. Cameron*, 907 F.2d 1051, 1066–67 (11th Cir. 1990). For example, in *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977), *overruled on other grounds by United States v. Woody*, 55 F.3d 1257 (7th Cir. 1995), the defendant was charged with threatening to shoot a police officer, and sought to present expert testimony that his mental condition made it highly unlikely he would have made such a threat. The Seventh Circuit held that the testimony about the defendant's psychological makeup was relevant to

14

explaining what the defendant was thinking at the time of the incident. *Id.* at 1076. In *Staggs*, the defendant showed a clear link between his psychiatric history and his ability to form the mens rea in question.

Weis has not done so here. The Offer of Proof refers to an inability to think logically or clearly based on the diagnosis of Self Defeating Personality Disorder. But even if Weis had shown such a diagnosis was reliable, Weis does not explain how this would demonstrate that she did not intend to commit the crimes at issue. *See Cameron*, 907 F.2d at 1067-68 (rejecting argument that defendant should have been allowed to consider defendant's schizophrenia on the issue of whether she intended to distribute drugs where she did not show how this disorder would negate intent). Testimony that Weis' logical thinking was impaired is the type of testimony that would be likely to confuse the jury. *Ricketts*, 146 F.3d at 498; *see United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997) (psychiatric evidence that defendant had impaired judgment was of limited relevance and properly excluded on the ground that it would not assist the jury). Because Weis has not shown that Gould's testimony would aid the jury in resolving the issue of whether she had the specific intent to commit the charged crimes, her testimony is not relevant to an involuntariness defense.

IV.

For the foregoing reasons, the government's motion in limine to bar defense expert Phyllis Gould (Dkt. No. 93) is granted. The government's prior motion on this issue, filed prior to the submission of the Offer of Proof (Dkt. No. 75) is denied as moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: Aug. 9, 2012